## Snyder's Estate.

*Issue devisavit vel non—Duty of executor to maintain will—Appointment of trustee by court suo motu.*

1. Where the persons appointed executors and trustees have had the will duly probated and have accepted letters testamentary, they owe a duty to the court, upon an application for an issue *devisavit vel non* on the ground of the testamentary incapacity of the testator, to produce all the relevant evidence reasonably obtainable upon his mental condition at the time of the execution of the alleged will and all the circumstances connected therewith. Hence, where on such an application the attorney for the executors, acting under instructions from his clients, refused to offer any evidence to sustain the will, the court *suo motu* appointed a trustee *ad litem* for all the trusts purporting to be created by the probated writings, and ordered a rehearing.

2. *Semble.* The family of a decedent cannot, under a family agreement, strike down a valid will and administer the estate under the intestate laws.

Petition for issue *devisavit vel non*. O. C. Allegheny Co., June T., 1921, No. 415.

*John C. Bane,* for plaintiff; *Wilson & Evans,* for defendant.

TRIMBLE, J., Jan. 13, 1922.—William P. Snyder, a prominent manufacturer of Pittsburgh, Penna., died Feb. 3, 1921, at the age of sixty years. A writing

signed by the decedent, purporting to be his last will and testament, dated Nov. 28, 1919, and another likewise signed by him, purporting to be a codicil thereto, dated Dec. 1, 1919, were probated together on Feb. 26, 1921, without a *caveat* or objection thereto. On the last mentioned date letters testamentary were granted to four executors named in said writings on their sworn petition, praying that the Register of Wills grant said letters to them. These executors are trustees *virtute officii*, and are his widow, Mary C. B. Snyder, his son, William P. Snyder, Jr., Henry Irwin, Jr., and George L. Collard. Charles H. McKee, the other executor, was a member of the bar of this county, but renounced his right to letters, and has since died. In order that the writings might be probated, the executors produced before the Register of Wills four witnesses, one of whom is a reputable lawyer, who was at that time practicing law in the office of Charles H. McKee, and is still a member of the bar and practicing his profession. All of these witnesses in making their formal proofs declared on their solemn oaths that the decedent was of sound mind and memory to the best of their knowledge and belief.

In these writings which were probated, the decedent bequeathed or devised, or attempted to bequeath and devise, a very large estate of the "value of several million dollars," as is alleged in the petition hereinafter referred to. The personal property of the decedent was inventoried at $9,372,967.65. There are twenty-six pecuniary bequests amounting to $56,400, a devise of a house and lot to William Jamison, one of the witnesses to the codicil, and a bequest of all of his household furniture and fixtures, the equipment belonging to his stables and garages, and all articles of personal use and adornment to his widow, the said Mary C. B. Snyder. The others of these bequests are distributed among servants and relatives, and included among the latter are his two grandchildren, each of whom receives $10,000. All of the residue of his estate is bequeathed and devised to his executors above named in trust, to be held by them in their custody for their management and distribution. One-third of the net income from this trust estate is given to his widow absolutely, one-third to his son absolutely, and one-third to his daughter in trust, for and during the term of their lives. There is an unlimited power of appointment given to his son, but a limited power to his daughter. The will forbids her from designating her husband as her appointee, but provides for him a sum which "will be ample and needful to afford him a sufficient competency to enable him to live in like rank and condition as at the time of his daughter's decease;" and it further forbids him or her, or any husband she may have, from ever becoming an executor or trustee under the will.

On June 27, 1921, his said daughter, Mary Snyder Drew, appealed from the probate of these writings as the will and codicil of the decedent, and filed a petition praying that the probate be set aside and that an issue *devisavit vel non* be awarded to the Court of Common Pleas. In her petition she alleged as a reason for the relief prayed for, that her father was incompetent to make a will or codicil on the dates of the said writings. Guardians *ad litem* were appointed for the two living grandchildren of the decedent.

The executors in their representative and individual capacities, in their answers, denied the petitioner's allegation of incompetency in these words: "The respondents deny all the averments contained in paragraph 8 (which alleged incompetency), whether by intimation or direct averment, and especially deny that William P. Snyder, at the time of the execution of what are referred to in said petition as the paper writings admitted to probate by the Register of Wills of Allegheny County as the last will and testament of said decedent and codicil thereto, was not of sound and disposing mind, memory and

1 D. & C.

understanding, and at said dates said William P. Snyder did not possess tes-
tamentary capacity necessary for the making of a valid will, and that at
said dates William P. Snyder, by reason of illness, unsoundness and feeble-
ness of mind, was wholly incapable of knowing or appreciating the nature or
effect or consequences of the act of making his will, or comprehending the
property he possessed, or the natural objects of his bounty, or of understand-
ing or of comprehending the meaning, effect or consequences of the dispo-
sition of his estate purported to have been made by said paper writings, and
that said paper writings are not the will of William P. Snyder."

The respondents then prayed that the petition should be dismissed. These
all and twenty-two legatees signed or joined in one answer, and William P.
Snyder, Jr., made the affidavit to it and six others joined in a similar answer.
The guardian *ad litem* for the petitioner's child, one of said legatees to the
extent of $10,000, joined with the petitioner, alleging a greater advantage in
inheriting from her if the will should be set aside.

At the trial the proponent produced the two witnesses to the will and the
two to the codicil, who testified that they saw the decedent sign his name to
the writings. The probate record of the signed writings as a will and codicil
of the decedent were offered in evidence, and the proponent rested.

The contestant produced eighteen witnesses, and no one of them was asked
any questions on cross-examination. The testimony shows that the decedent
died of hardening of the arteries, after having been afflicted for several years,
and that during the progress of this malady his body and mind became gradu-
ally impaired, and, in the opinion of some of the witnesses, he was not com-
petent to make a will on Nov. 28, 1919, or a codicil on Dec. 1, 1919. After
the petitioner rested, counsel for all the respondents, except the guardian for
the child of the petitioner, stated to the court as follows: "May it please your
Honor, we have nothing to offer in defence, and in saying this I think I ought
to say to you that in this we are acting by the direction of our clients."

It appears from the testimony that as late as the spring of 1920 the dece-
dent was able to travel around, going as far away from his home as Palm
Beach, Florida, principally, perhaps, in his automobile, and that "he keenly
realized his condition," and that "his conduct throughout was for the pur-
pose of keeping others from realizing what his condition was." There is no
testimony to show where the writing purporting to be a will was signed, or
in what circumstances, whether it was signed in the office of Charles H.
McKee, his counsel, or elsewhere, except the mere fact that he signed both
papers, and this, notwithstanding the fact that at least the four witnesses
are obtainable who appeared in the register's office and swore that he was of
sound mind when he executed these written instruments. Although a man
of very large business interests and extraordinarily wealthy, having stated,
as he says in his probated writings, that the chief portion of his estate con-
sisted of his interest in the Shenango Furnace Company, the pig-iron busi-
ness carried on in the name of William P. Snyder & Co., and that the furnace
company owns iron mines in Minnesota and is engaged in operating the same
and selling a portion of its products delivered at lower lake ports, and in
manufacturing the balance into pig-iron at blast furnaces which it owns at
Sharpsville, Penna., and which company owns a coal mine and a coking plant
in Westmoreland County, Penna., and is engaged in operating the same and
in using or selling the product thereof, and which owns and operates steam-
ships on the Great Lakes for the transportation of its ore, and also coal, to
the northwest, and that he himself owned the majority of the shares of stock
of the Shenango Steamship Company, which owns steamboats on the Great

Lakes for the transportation of coke, ore and coal, yet, notwithstanding all these statements by him, some of which are well known to the people of this community, not a single witness was called by the trustees, who assumed their duties prescribed by his probated writings and the law, to give the court any of the history of this man's life at any time at all.

It may be the fact that he was incompetent, and we carefully avoid any intention of intimating otherwise in this opinion, but we feel that in justice to this man's efforts and what he has done for the business interests of this community, his will should not be set aside on the whim of the trustees, but that it should only be done, if at all, after a careful consideration of all of the facts relating to his mental condition at the very time at which he executed the probated writings.

When it is admitted that a man has signed a writing as his will, which has been allowed to be probated without a *caveat*, and letters testamentary are granted to persons who have caused the letters to be granted by a sworn petition therefor, who have begun the administration of the estate and denied the incompetency of the decedent to make a will, they owe a duty to the court to produce all of the relevant evidence reasonably obtainable which in any manner pertains to the decedent's mental condition at the time when he signed the probated writings, and all of the circumstances connected therewith. These trustees have assumed a duty from which they cannot escape by directing their counsel not to defend the trusts which they have assumed, when it is possible for them to produce evidence which may result in what they do not want. They can be removed by this court by petition, or in certain circumstances *suo motu*, when they become hostile or negligent or attempt to acquire any of the trust property, as they may be when they do not meet the requirements of the statutes. As evidence of the failure of Mrs. Mary C. B. Snyder, the widow of the decedent, to perform her duties as trustee, and showing that she has become hostile to the trust, and that she has destroyed it, so far as she is able to, by taking from it some of the property included therein, we find recorded in the recorder's office of this county her election to take against the decedent's will dated Jan. 3, 1922, and recorded on Jan. 4, 1922, of which we take judicial notice, wherein she elects to take her share as widow of the decedent under the intestate laws of Pennsylvania, and in view of this fact, it cannot be conceived that she desires any longer to be a trustee under her husband's probated writings if eventually they should be declared to be his will. The family of this decedent cannot agree to strike down these writings of the decedent if they amount to a valid will and codicil, and the court will prevent it. A judge "is the responsible head of his court, and if he has reason to suspect wrongs or irregularities, it is not only his right, but it is his imperative duty to see to their correction," and the only limitation on this is that he shall proceed in an orderly manner: Stitzel's Estate, 221 Pa. 227.

Before any decree for an issue *devisavit vel non* will be made, the court will *suo motu* appoint a trustee *ad litem* for all of the trusts purported to be created by the probated writings and order a rehearing of this case.

### Order.

And now, Jan. 13, 1922, upon consideration of the manner in which this case was tried and the facts set forth in the foregoing statement, it is ordered, adjudged and decreed that a retrial of the issue between the petitioner and the respondents be had, and that Arthur L. Over be appointed trustee *ad litem* to represent the trusts under the probated writings, and George E. Alter is appointed his attorney to represent the trusts in said probated writings

1 D. & C.

in said retrial, and that the executors of the will give access to the trustee and his counsel to all books and papers of every description relevant to a retrial of the issue, and aid and assist them in every lawful manner to produce witnesses and evidence before the court at a date to be fixed for retrial, in order that this case may be determined according to law.

From Edwin L. Mattern, Pittsburgh, Pa.